**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 20-10177-CJP |
| BRIAN HAROLD FALLON and | ) | |
| PAULA MARIE FALLON | ) | |
| | ) | |
| Debtors | ) | |
| | ) | |

**ORDER**

Before the Court is the *Motion For Clarification and/or Modification of Order of
Abstention Granting Relief from Automatic Stay, and Directing that Certain Issues Be Resolved
By the Land Court* [ECF No. 195] (the "Motion") filed by Edward O'Neil and Lucy Gilbert (the
"Movants"), pursuant to which the Movants seek clarification and, ultimately, expansion of the
scope of an order of entered by the court (Bailey, J. *ret.*) on May 2, 2022 [ECF No. 158] (the
"Abstention Order") abstaining from determining certain limited questions regarding the
ownership of registered land located at 19 Moulton Road, Peabody (the "Property") to the Land
Court Department of the Trial Court of the Commonwealth (the "Land Court"). I have
considered the Motion, the opposition thereto [ECF No. 199] (the "Objection") of the debtors
Brian H. Fallon and Paula M. Fallon (the "Debtors"), and the arguments of counsel at a hearing
on the Motion, and have also taken judicial notice of the record in this case and the dockets of
cases relating to the Property relevant to my determination. For the reasons below, the Motion is
DENIED.

I.     **Background**

While certain facts are in dispute, the facts material to my determination of the Motion
are not. The Debtors have at all relevant times resided at the Property, which is registered land.

On May 2, 1994, the Debtors transferred their interest in the Property to themselves, as trustees of the 19 Moulton Road Realty Trust (the "Trust").  Long after the transfer, the Movants had hired Brian Fallon to do a construction/renovation project at their home.  The Movants filed suit against Mr. Fallon in Middlesex Superior Court in relation to that project in December 2002.

In February 2003, the Debtors conveyed the Property from the Trust to themselves as tenants by the entirety (the "2003 Transfer").  On September 5, 2003, Paula Fallon recorded a Declaration of Homestead with the Essex Registry of Deeds for the benefit of herself and her family.  On August 11, 2005, the court in the Middlesex Action entered a monetary judgment against Brian (the "Middlesex Judgment").  On September 1, 2005, Ms. Fallon recorded a second Declaration of Homestead with the Essex Registry of Deeds for the benefit of herself and her family.

On October 12, 2005, Mr. Fallon, individually, filed a chapter 7 bankruptcy case, Case No. 05-21392-WCH (the "2005 Bankruptcy Proceeding"), seeking, among other things, discharge of the Middlesex Judgment.  The Movants commenced an adversary proceeding in the 2005 Bankruptcy Proceeding, and on September 22, 2008, obtained a determination that the Middlesex Judgment was non-dischargeable.  In the 2005 Bankruptcy Proceeding, Mr. Fallon claimed an exemption in his interest in the Property in the amount of $180,000.  The Movants did not object to his claimed homestead exemption.  On March 10, 2010, the Court entered an order granting a discharge to Brian Fallon in the 2005 Bankruptcy Proceeding of his dischargeable debts, excluding the Movants' Middlesex Judgment that had been previously excepted from discharge.

In November 2009, the Movants commenced a fraudulent conveyance action against both of the Debtors in Essex Superior Court (the "Essex Action") seeking to void the 2003

2

Transfer of the Property from the Trust to the Debtors.[1]  Following a trial in the Essex Action,

the Movants obtained a judgment, which was corrected on March 22, 2012, against the

Debtors, jointly and severally, for the amount of the original judgment against Brian Fallon,

plus interest and attorneys' fees.   In connection with that judgment, the Essex Superior Court

voided the transfer from the Trust to the Debtors and declared as void Paula Fallon's 2003 and

2005 Declarations of Homestead to the extent that they impeded the Movants' ability to collect

on their judgment.  In addition, on May 30, 2014, the Essex Superior Court entered a  judgment

and order (the "Essex Order") purporting to void the Debtors' 2003 Transfer of the Property

from the Trust to themselves as tenants by the entirety, vesting title to the Property back into

the Trust, and stating that all right, title, and interest in the Property be held by the Debtors, as

trustees of the Trust.  The Essex Order stated, in part:

> [I]t is now ORDERED that the February 13, 2003 transfer of title to real property
> situated at 19 Moulton Road, Peabody, Essex County, Massachusetts from Brian Fallon
> and Paula Fallon as Trustees of the 19 Moulton Road Realty Trust to the defendants as
> tenants by the entirety be set aside.  Said transfer, which is being voided by this Order,
> is reflected in Document No. 413994, recorded with the Essex South Registry of Deeds
> Land Court.
>
> Pursuant to M. G.L. c. 231A, declaration is now entered by the Court vesting all right,
> title and interest in said real property back into Brian Fallon and Paula Fallon as they
> are Trustees of the 19 Moulton Road Realty Trust.

Essex Ord., Ex. 5 to Homestead Obj. (as defined *infra*).   On October 16, 2014, the Essex

Order was noted on the Property's certificate of title (Certificate 75691) (the "Certificate of

Title") as Document Number 556307.

---

[1] For a more complete recitation of the history of litigation between the parties and frustration of the efforts of the
Movants to collect the judgments entered first against Brian Fallon and then against both Debtors, *see* the objection
to claim of homestead and the attachments to that objection at ECF No. 62.

In December 2018, the Movants initiated a supplementary process action in the Peabody District court to enforce the Essex judgment.  On August 20, 2019, the Peabody District Court ordered that "until further order of this Court, Brian Fallon and Paula Fallon shall not convey or encumber [the Property]" (the "Peabody District Court Order").

In August 2019, the Movants also sought the issuance of writs of attachment in connection with the Essex Order and the Debtors opposed that motion because the Property was titled in the Trust and asserting that their children were the beneficiaries of the Trust. The Essex Superior Court held a hearing on the attachment motion on September 19, 2019.

On September 20, 2019, the Debtors filed a new Declaration of Homestead with respect to the Property at the registered land section of the Southern Essex Registry of Deeds (the "Homestead").  The Declaration of Homestead form was titled "Declaration of Homestead for Homes Owned by Natural Persons" and identified the Debtors as the owners and referenced the Certificate of Title for the Property.

 The Debtors commenced a voluntary chapter 7 case on January 23, 2020 (the "Petition Date").[2]  On their Schedule A/B, the Debtors listed the Property with a value of $695,000.00 and noted they owned the Property in fee simple.  On Schedule C, the Debtors claimed an exemption in their interest in the Property in the amount of $226,522, representing all the equity in the Property at that time.  On January 8, 2021, the Movants filed *Objection to the Debtors' Claim of Homestead Exemption* [ECF No. 62] (the "Homestead Objection").  The Movants argued that the Debtors were not entitled to claim the Homestead due to the ongoing

---

[2] The Movants have obtained a judgment in this Bankruptcy excepting the amended monetary judgment entered on November 27, 2013 in the Essex Action from discharge pursuant to § 523(a).  *See* Adversary Proceeding 20-1055 ECF Nos. 53 and 56.

dispute over the state of title of the Property and that the Homestead is void as having been
entered in contravention of the Peabody District Court Order.

In the Abstention Order entered after an evidentiary hearing on the Homestead
Objection, the court deferred ruling on the objection, abstaining from the issue of whether the
Debtors possessed title to the Property as of the Petition Date and granting relief from the
automatic stay for "the limited purpose of a determination [by the Land Court] of the interest of
the Debtors in the Property on the petition date: whether they held title together in a tenancy by
the entirety, or whether title was held in a trust, and, if the latter, whether they were the
beneficiaries of the trust and whether they were trustees of the trust, all as of the moment of
their bankruptcy filing, on January 23, 2020, at 10:44 a.m."  Abstention Ord., at 2.

After the parties jointly moved in the Land Court as directed, the Land Court issued a
decision on cross-motions for summary judgment on June 14, 2024, determining that the
Debtors held record title to the Property as of the Petition Date as tenants by the entirety.  The
Land Court concluded that the notation on the Certificate of Title did not, itself, effect a
transfer of title for the Property.  The Land Court referenced additional state court remedies,
including certain retroactive relief, that could affect title and directed the Movants to come
back to this Court for clarification as to whether the Abstention Order intended to permit the
Land Court to consider such remedies after answering the question of the state of title as of the
Petition Date.

The Movants now seek a clarification of Judge Bailey's Abstention Order or an order
granting further relief from stay that would allow them to pursue additional remedies in the
Land Court.  Specifically, the Movants seek stay relief to request that the Land Court exercise
its equitable powers to declare that the Trust is the owner of the Property *nunc pro tunc* to a

5

date prior to the Petition Date—effectively taking the last step necessary to effect the Essex Order retroactively, presumably, to remove the Property from the Debtors' estate, which would provide an unassailable basis for their Homestead Objection.

As the Abstention Order was clear that the question to be answered by the Land Court was the ownership status of the Property as of the Petition Date and that question has been determined, I must consider whether relief from stay would be appropriate under the circumstances of this case for the Movants to attempt to exercise additional state court remedies in the Land Court that could alter the ownership status of the Property as of the Petition Date.

## II.    Standard

Subject to certain exceptions not applicable here, 11 U.S.C. § 362(a)(1) provides that the filing of a bankruptcy petition stays the "commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . . ."[3]  11 U.S.C. § 362(a)(1). However, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . for cause . . . ."  11 U.S.C. § 362(d)(1).  The Bankruptcy Code does not define "cause" for purposes of § 362(d)(1), and "[t]here is no set list of circumstances that a bankruptcy court is required to consider in evaluating whether § 362(d)(1) 'cause' exists to lift the automatic stay." *Disciplinary Bd. of the Sup. Ct. of Pa. v. Feingold (In re Feingold)*, 730 F.3d 1268, 1277 (11th Cir. 2013).  "Rather, courts evaluating whether to grant stay relief have looked to a variety of case-specific factors . . . ." *Id.* (citations omitted).  The First Circuit has stated that the factors articulated by the Second Circuit in *Sonnax Indus., Inc. v. Tri Component*

---

[3] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the "Bankruptcy Code" or "Code").

*Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990), "provide a helpful framework" for determining whether there is "cause" to grant stay relief to allow litigation to proceed in another forum. *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 989 F.3d 170, 179 (1st Cir. 2021) (citation and internal quotations omitted).

The *Sonnax* factors are:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus., Inc.*, 907 F.2d at 1286 (citation omitted).

"Not all of [these] factors are relevant in every case, and the Court need not assign equal weight to each factor." *In re Breitburn Energy Partners LP*, 571 B.R. 59, 64 (Bankr. S.D.N.Y. 2017) (citations and internal quotations omitted). Nor are courts compelled to "rely on any plurality of factors in deciding whether to lift the automatic stay." *In re Patriot Contracting Corp.*, No. 05-33190 (DHS), 2006 WL 4457346, at *3 (Bankr. D.N.J. May 31, 2006) (citation omitted); *see also Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 25 (B.A.P. 9th Cir. 2003) (stating that these factors "are merely a framework for analysis and not a scorecard"). Ultimately, "broad discretion is accorded to the bankruptcy court" in weighing the "factors peculiar to the particular case." *In re Sonnax Indus., Inc.*, 907 F.2d at 1288.

7

### III.   <u>Analysis</u>

The automatic stay provided by § 362(a) applies to claims against the Debtors and
"property of the estate."  Section 541(a) defines "property of the estate" broadly to include "all
legal or equitable interests of the debtor in property as of the commencement of the case." 11
U.S.C. § 541(a)(1).  "Ordinarily, state law creates and defines the underlying property interests,
but federal bankruptcy law determines whether those interests are 'property of the estate.'"
*Darr v. Dos Santos (In re TelexFree, LLC)*, 941 F.3d 576, 584 (1st Cir. 2019) (internal citations
omitted).  Here, the Debtors' interest in the Property as tenants by the entirety is property of the
estate.

Weighing the relevant *Sonnax* factors, sufficient cause does not exist under § 362(d)(1) to
grant relief from the automatic stay.  The Land Court has determined the Debtors' interest as of
the Petition Date.  That specialized court is not uniquely qualified to determine the legal
consequences of that determination in the context of a bankruptcy.  More importantly, the
retroactive relief that could be afforded by the Land Court may conflict with federal bankruptcy
law in determining property of the estate and the viability of exemptions.  *See Patriot Portfolio,
LLC v. Weinstein (In re Weinstein)*, 164 F.3d 677, 682-683 (1st Cir. 1999).  This Court is the
only court that can provide complete resolution of the issues that directly affect the rights of
these Debtors and the Movants under bankruptcy law.  Possible inconsistent rulings would be
prejudicial.

In seeking relief from the automatic stay, the Movants seek to effect a transfer the
Property to the Trust effective prior to the Petition Date and then litigate whether the Debtors
were the sole beneficiaries of the Trust.  As summarized by Judge Bailey:

> The Debtors maintain that they owned the Property as tenants by the entirety; the
> [Movants] allege that the Property was held in a trust and that the Debtors were then (and

8

> remain) the trust's beneficiaries; and in proceedings in state court before the
> commencement of this case, the Debtors denied that they were then beneficiaries of the
> trust.

Abstention Ord., at 2.[4]

Given the limitations on homesteads provided by Mass. Gen. Laws ch. 188, § 3(b), a state court may determine that the recorded homestead declaration is not effective (as has been decided by the Essex Order) and that, even if a proper homestead declaration had been filed, the Massachusetts homestead exemption may not protect one or both of the Debtors should it be determined that they are the beneficiaries of the Trust because the exemption would not be effective under state law as to a judgment based on fraud. *See* Mass. Gen. Laws ch. 188, § 3(b)(6). This result would vary significantly from the federal exemption scheme provided by the Bankruptcy Code. *See* 11 U.S.C. § 522; *In re Weinstein*, 164 F.3d at 682–683 (determining that § 522(c) preempts the "built-in limitations" of the Massachusetts homestead statute – in that case, the prior debt exception then provided for by Mass. Gen. Laws ch. 188, § 1(2) (repealed)).

As an illustration of the potential prejudice to the Debtors in relation to the federal exemption scheme, if the Property had been re-transferred to the Trust prior to the Petition Date, the Debtors could have declared a homestead at that time at that time as trustees of the Trust for the benefit of all beneficiaries of the Trust. Mass. Gen. Laws ch. 188, § 5(a)(4). The Movants' claim is against the Debtors. Presumably, they seek to reach whatever interests the Debtors had in the Trust to satisfy their judgment. That alleged interest in the Trust, to the extent proven, may have been subject to a claim of homestead under Mass. Gen. Laws ch. 188, § 5(a)(4). While Massachusetts law limits the claim of homestead as against certain claims, such as fraud,

---

[4] The Movants provide copies of statements where the Debtors admit that they were "the beneficiaries" of the Trust. Homestead Obj. (Exs. 1–3). The Movants have also provided documents in connection with the pursuit of writs of attachment in the Essex Superior Court in which the Debtors asserted the Property was held in Trust and that their children were the beneficiaries. The Debtors appear to have stated different positions when it suited their interests.

*see* Mass. Gen. Laws ch. 188, § 3(b), federal bankruptcy law does not recognize such

limitations. *See In re Weinstein*, 164 F.3d at 683; *In re Smither*, 542 B.R. 39, 45 (Bankr. D.

Mass. 2015) (examining *Weinstein* and recognizing that "the fraud exclusion in the state

Homestead Act is unenforceable in bankruptcy to the extent it is inconsistent with the federal

Bankruptcy Code"). *Cf. In re Hoover*, 574 B.R. 413, 418, 421–22 (Bankr. D. Mass. 2017)

(applying *Law v. Siegel*, 134 S. Ct. 1188, 1196, (2014) to deny amendment of exemption based

on a debtor's bad faith and concluding "[w]hile it is hard to square *Siegel's* conclusion with the

frequently cited refrain underlying bankruptcy protection that it is the 'honest, but unfortunate

debtor' that may obtain the protections and benefits of filing, this Court is constrained by the

Supreme Court's dicta on the issue of exemption amendments and bad faith conduct"); *Mateer*

*v. Ostrander (In re Mateer)*, 525 B.R. 559, 565 (Bank. D. Mass. 2015) (holding that the debtor

was entitled to claim a Massachusetts homestead exemption of insurance proceeds from an

insurance claim and cash payments related thereto the debtor intentionally and fraudulently

failed to disclose in his bankruptcy case, despite his intentional and fraudulent conduct).[5]

Because title had not transferred to the Trust as of the Petition Date, the Debtors claimed a

homestead in the Property as tenants by the entirety consistent with the record state of title.

The interests of the Debtors in property of the estate are established as of the Petition

Date, as are claims of exemptions. Post-petition, the Debtors cannot record a claim of

---

[5] The court in *In re Mateer* further addressed whether the *Siegel* limitations on bad faith conduct applied to state exemptions given the pronouncement in *Siegel* that it applied to federal exemption cases only, stating:

> Even if Massachusetts law recognizes a court's equitable power to deny homestead protection to a debtor engaged in fraudulent conduct with respect the homestead property, the United States Court of Appeals for the First Circuit in *Patriot Portfolio, LLC v. Weinstein (In re Weinstein)*, 164 F.3d 677 (1st Cir. 1999), has instructed that such power is pre-empted by federal law in the event bankruptcy ensues. *Weinstein* appears to slam the door left minimally open by the Supreme Court in *Law v. Siegel*.

*In re Mateer*, 525 B.R. at 566.

homestead under Mass. Gen. Laws ch. 188, § 5(a)(4) that would be effective in this bankruptcy case. Essentially, the Movants are attempting to apply the limitations of the Massachusetts homestead exemption through current and prospective orders and judgments of the state courts to avoid application by the Debtors of the federal exemption scheme. The prejudice to the Debtors and risk of relief inconsistent with federal law favors the Debtors in this case.[6] Considering the *Sonnax* factors, cause does not exist to grant relief from the automatic stay for the Land Court to give effect to the Essex Order.

It does not escape me that this result permits the Debtors to avoid some of the consequences of bad acts determined by the state court and the effect of judgments and orders entered by those courts, but I am constrained by the federal exemption scheme and the requirements of the Bankruptcy Code discussed above in considering the *Sonnax* factors. As such, cause is not established to permit relief from stay. While the result frustrates the Movants' efforts to recover from the Debtors with respect to the Property, the Bankruptcy Code provides exemptions that may not be available under state law and can operate to limit certain rights of creditors in favor of a debtor.

## IV.  <u>Conclusion</u>

For the reasons stated above, I deny the Motion. Because of the state of title of the Property as of the Petition Date and the fact that fraud or other bad acts would not defeat the

---

[6] I have also considered the Peabody District Court Order and whether it affects my determinations regarding the Motion and the Movant's Homestead Objection. It does not. I need not reach whether an injunction interpreted to limit a person's claim of homestead would be unenforceable as against public policy or whether violating such an injunction would not render a homestead claim "void" under federal law. *See In re Dickey*, 517 B.R. 5, 21 (Bankr. D. Mass. 2014) (predicting that the Massachusetts "Supreme Judicial Court would find an injunction prohibiting the acquisition of a homestead against public policy"). The Peabody District Court Order provided that the Debtors "shall not convey or encumber [the Property]." Filing a declaration claiming statutory homestead rights above the "automatic" homestead provided by Mass. Gen. Laws ch. 188 is neither a conveyance, nor an encumbrance. *In re Dickey*, 517 B.R. at 20 ("the acquisition of a homestead neither alienates nor transfers an interest in property").

claimed Homestead Exemption that comported with the state of the Debtors' title as of the

Petition Date, I will also enter an order overruling the Movants' Homestead Objection.


Dated:  March 31, 2025                    By the Court,


                                          _____
                                          Christopher J. Panos
                                          United States Bankruptcy Judge